Our last case of the morning is No. 22-11776 Shiloh Christian Center v. Aspen Specialty Insurance Company. Mr. Schruble. And you've reserved five minutes for rebuttal, correct? Yes, thank you. Good morning and may it please the court. Matthew Schruble for the appellant Aspen, I'm sorry, the appellant Shiloh Christian Center. The district court in this case committed reversible error by granting summary judgment as to all damages, not by relying on the insurance crazy cases in which you've got the face of the policy on your side and like every ounce of what we think we know about what really happened here is on the other side and not this potential windfall in the offing. I'm not, I would, crazy I would say and for other reasons. If you look at the the facts and the insurance company knew from the beginning we found out a discovery that it was ambiguous but no not at all and in fact if you look and we kind of detail again this not relevant as the cases that this court even pointed out what the parties were thinking, what documents were going on, but if you want to consider that for a moment just to answer your question clearly you can look at the affidavits, you look at when the claim was reported, the insured never even believed there was any possibility that interior water damage would be excluded and so even if you improperly consider extrinsic evidence and improperly consider whether the of knowledge that interior water damage would be excluded. So it is not the case for that reason. But that but I mean that was never the basis of your claim right? You never made an interior water damage. It was the primary basis for the claim and if you go through the facts in our starts out in our initial brief and I'll just quickly point you to just some of the pages page three to four in our brief you'll see that the claim was reported as interior damage to ceiling walls and floorings. So when the insurer by that herself reported the claim she didn't report wind damage. She reported claims for interior water damage and the policy quite is it is it true though that in both years the claim named the storm? I'm sorry? Your claims for both years true the 2016 or the claim on the 2016 policy refers to water damage but it says water damage from Hurricane Matthew and then the 2017 one says you know cause of loss Hurricane Irma right? Correct yes and so the difference I think you might be thinking of is on the policy the 2016 to the 2017 policy on the declaration page it said $5,000 deductible for all losses $25,000 for wind or hail parentheses excluding named windstorm and then you go on to read the policy itself the policy clearly provides coverage all risk coverage says only exclusions apply there's no exclusions for wind and it specifically says that if you have interior water damage and that interior water damage is caused by it opening in your roof or your walls from wind then that is covered so that's the first policy we're operating under the second one that provision ties back to damage by a covered cause of loss which would loop us right back to the name storm issue wouldn't it? No if you look at our brief and we walk walk through the policy in the first few pages it's page four of our initial brief cites the policy provision and it provides special coverage and then it loops you to what you're indicating your honor what is covered and then also what is excluded and what is covered the starting point is any damage is covered and it's only possibly excluded if it's excluded under section b exclusions and under section b exclusions there's a number of them none of which are wind none of those which are named wind storm and in fact that there's a potential exclusion for interior water damage but that's actually covered if there was an opening created by wind and that's why the importance all these extrinsic facts that we're talking about if you look at the cases that we were asked to be prepared for they make it very clear that if the first off if there's a patent ambiguity you can't look beyond the policy and by all accounts the ambiguity of the first policy that's what it was because on the declaration page it referenced in parentheses it said named wind storm exclusion but the policy itself clearly provided coverage for all damages including wind and interior water you go on to the second policy that was issued for hurricane irma the 17th to 18th policy and that policy made no indication whatsoever that a named wind storm would possibly be excluded nor any exclusion whatsoever so that you do think that the policies were ambiguous with respect to named wind storms yes so that i was just going into that so the first policy is ambiguous because as we detailed there's a parenthetical and the declarations page which says excluding named wind storm with no definition no indications that include interior water damage so that one is it has a patent ambiguity and court only relied on extrinsic evidence the district court found no support in the policy to find its exclusion solely relied on emails from an agent's as the irma policy there's no ambiguity at all instead the the irma policy as we argued in this court where you're very smart clerks found the case you know even even better than than i had found because it really highlights that point and that's the emergency associates of tampa versus sassano case and in that case that explained that if you look at just the terms of the policy itself in that case it was looking at you just said the policy was they're able to look at just the terms alone and see that there was coverage based on that provision when you look at just the irma policy alone which is the starting point it clearly provides coverage not only for wind not only for interior water damage but also for a named wind storm because on that policy they removed that parenthetical and that's um undisputed as well so if you go with respect to the 2016 policy where i guess you've acknowledged you think there is an ambiguity on the face of the policy what what then like what sort of do the rules governing patent and or latent ambiguities govern or does this canon of construing insurance policies in favor of the insured contra properentum if i'm pronouncing that correctly yes thank you yep so two things to that and if you look at the questions we're asked to prepare for in those cases the uh this this uh circuit previously certified basically the exact question in washington national uh versus uh ruderman to the florida supreme court asking um and basically the question submitted was um the decisions that are out there that allow extrinsic evidence in the attempt to be considered to explain does that apply in insurance context and the florida supreme court clearly said no in a insurance context is very different in the insurance context you never even get there um and you don't get there because it's automatically construed against the insurer it's different than your um typical contract and the third question that was let me ask you this just so i make sure i understand does that mean that the whole sort of like interpretive enterprise that might otherwise apply in the face of patent or latent ambiguity just like doesn't apply in the insurance context yeah there's don't get there yes and that's the 11th 11th circuit submitted that question to the florida supreme court and that's exactly what the florida supreme court said it said that you don't get there and even highlighting in this case uh the the last question we were asked to prepare for was asked we were asked about whether this policy has a integration clause and that's the last question and in this case um the uh not only does florida law make it very clear that the insurer is bound by the policy only you can't rely on any other documents the policy itself um which is cited on the january 23rd 2023 order from this court identified that the the the insurance policy drafted by aspen included a provision entitled changes common policy conditions and clearly says that the policy contains all the agreements between you and us concerning the insurance afforded the policy terms can be amended or waived only by an endorsement issued by us and made part of this policy so in this case as the question found not only is florida law florida supreme court clear on that issue their very own insurance policy said the only way the terms of this policy can be changed is through a policy endorsement that's attached to the policy in this case they never issued an endorsement they never issued an exclusion for a named windstorm and they sure certainly never attached it to the policy so looking at their very own provision which is the integration provision the merger provision you look at the case cases that this court cited in the january 23rd 2023 order and that makes very clear that when a contract has an integration clause like that that is binding and the parties are bound by the contract because it is presumed that the contract terms are the only terms that exist that is the third reason why it's the district court could not possibly have found no coverage because it was bound by the terms only by the contract based on the florida supreme court's decision and based by the policy itself which says you only go by this court so the entire ruling of the district court was premised on looking outside the policy and looking at emails back and forth from an agent and the insurance company's agent the insurance agent that's the only basis the district court could come up with or aspen for that matter to argue against coverage and that is was impermissible as a matter of law so because of that because contract interpretation was clearly not followed here that's a that's a legal error as a matter of law that requires reversal i just want to make sure i understand your argument so you're saying that the at least one policy was ambiguous right yeah so and it and it's actually the first the matthew policy it's actually they're arguing essentially that's ambiguous because they're saying that well if you look at the what what are what are you saying is what i'm asking what i'm saying is that the hurricane matthew policy clearly provided coverage for interior water damage there's no exclusion for that at all and that policy is ambiguous at best at best so it's ambiguous at best because the declaration page had one word in the parenthesis named wind exclude named windstorm and you look at the heart of the policy there's no exclusion whatsoever and it actually specifically provides coverage for interior water damage that's the first policy as to the second one we're actually saying that the policy is clear and nobody can dispute that because there's no uh indication or reference in any portion of policy anywhere that the named wind and storm exclusions is ever excluded and if you look at the record look at our brief we company knew it they acknowledged the ambiguity they knew they made a mistake and they just did nothing about it until i guess i don't understand are you you just said it was clear but then you said the insurance company acknowledged the ambiguity so do you think it's clear or that there's an ambiguity so yes so if i'm over time if i could just get 30 seconds because it is important point you're good okay thank you so the uh on the first policy the hurricane matthew policy our position is that the policy is clear that it provides coverage for interior water damage that's our first position as to that and secondly to the extent they want to say other damages like exterior wind damage is excluded that's ambiguous because there's one portion in the declarations page that makes a three-word reference to that okay so i'm going to stop you right there so if for that portion which you say is ambiguous does it matter whether that ambiguity is patent or latent in your view it absolutely does and it's a patent because it's identified on the face of the policy only and because of that is it proper to consider extrinsic evidence okay and do you think it did the did the district court discuss the distinction between patent and latent ambiguity uh didn't and the order did not go into any details of it um clearly obviously um it didn't didn't say whether the policy was ambiguous or not presumably had to of because it said it's excluded without relying on the policy instead it relied the court district court relied on e-mails which was you know impermissible so i'm so so i'm so sorry but now i think now i think i'm good so with respect to 2017 i get it right there's no weirdness in the potentially in backup uh in in the alternative that it is at at worst for you ambiguous and then so in resp i thought in response to me you said and the florida supreme court on the certified question from the 11th circuit has said when it's in when an insurance policy is ambiguous you just construe it in favor of the insured but then in response to judge grant she asks you whether it absolutely matters but i thought in response to my contra profferentum question you had said all this latent patent stuff just doesn't apply in insurance policies and you never get there it doesn't apply for the second reason so i can if i can answer your question exactly so as 2017 our position is clear as 2016 our position is that there isn't an ambiguity that ambiguity is patent or patent however you say that word and because it is that that means that you can't look at and what you're referring to judges and that i also said and then in addition to that in addition to the court airing uh committing error because it could not look at extrinsic evidence when there's a patent ambiguity it also aired because beyond that that's just general contract interpretation beyond that when you're dealing with insurance policy interpretations as the florida supreme court case held that's an even higher standard for a secondary reason you cannot do that and it's construed in favor of the insured so what i was saying was both of those are reasons why the district court aired got it okay thank you mr rumbly good morning may it please the court uh charles only here on behalf of aspen specialty insurance company so i i don't think anybody in this room has any doubts about the actual facts behind this it's fairly clear from the record that the plaintiffs did not purchase coverage for named windstorm they saved themselves approximately twenty two thousand dollars a year for a number of years by not getting the coverage uh the evidence in the record uh the communications between the age and the insurance company there was clearly no intent factually to purchase that type of coverage we're here today to talk about whether or not um despite all of the actual interactions and dealings between the parties um they should be entitled to recover for these two hurricanes um because of some error ambiguity or what have you in the policies well i mean i i don't know i mean that's a lot of sort of hand-waving i mean like i don't think they would say i mean the policy is what it is it says what it says um doesn't exclude for named windstorms it's got an integration clause i mean maybe we should just do it policy by policy but what do you have to say to 2017 well so before i get to 2017 the history i think is important and first of all my client has not conceded that the policies were ambiguous the corporate representatives did not concede it was ambiguous um the so you think the 2017 policy unambiguously excludes named windstorms how all right so the district court did not rely solely on this extrinsic evidence uh the district court relied on marcosano it's the florida supreme court case that we briefed um it says that when a policy renews year to year it uh renews basically in its own terms and continues year to year so we have the original policy that issued in 2014 uh that's the policy that did have um uh coverage for windstorm can doesn't say that the parties are entitled to rely on the renewals it says the insured is entitled to rely on the renewals yes which makes sense in light of contra proferentum that the insured gets the benefit of every doubt right so yes but so that was a um rejection case and in that case um i know the language that you're talking about your honor the um the insurance company was saying in that case that we don't owe you the increased limits um after the insured selected i think twenty thousand dollars in limits versus three hundred thousand which was their liability limit so uh the insurer was arguing hey we shouldn't be bound by these terms of the renewal policy because you know we didn't sign the um rejection form for that year you know let us out of that so while the court does say the insured is entitled to rely i think another interpretation is the insured is entitled to expect that the terms of the policy that they have are going to you know aspen is entitled and the plaintiff is entitled to rely on the fact that they don't have windstorm coverage or that um or both of the hurricanes is it your position then under that case that no matter how different how materially um whatever the terms of the policy itself are that this renewal sort of proposition um sort of trumps i mean like what if the what if the premium what if the renewal uh you know sort of show or what if the the policy terms the the new policy let's say the 2016 policy what if that shows that the premium should be a million dollars a month is the uh insured still you know sort of is it okay if the insured just says like no no because this was a renewal and it was only fifty dollars last well i don't know how to answer that question on a hypothetical just based on premium increases i can tell you in this case that the policy was the same forms we had the same commercial property forms um you know the only change was um so from 2015 to 2016 they there was no endorsement from 2015 if you look at later on you can look appendix tab for the plaintiff 25 4 is that 2015 endorsement that came in and removed the name windstorm coverage and it says in just name windstorm coverage is moved removed from this policy i don't think there's anything ambiguous about that i think everybody knows what a name windstorm is well right but the ambiguity attaches it either attaches or it doesn't attach to the face of the policy right we're not asking about whether or not um you know sort of something that happened in 2015 is or is not ambiguous we're here to litigate the 2016 and 2017 yes but based on marcusano we're still you know this is an operative um the actual endorsement when they came around 2015 to remove that um provision um what if i mean what if the what if other evidence showed that there was an intention to put back in that coverage right it's not like there it's not like there's no way to do that well well first of all there was no intention to put that no i get it i'm just saying i'm you will not concede anything about your particular facts but i'm saying in a different case if there's an exclusion earlier and then the parties intend to get rid of that exclusion there has to be a way to do that right you would do that on the face of the new policy wouldn't you sure and if i guess if it doesn't appear on the face then you might have a latent defect that we would go into the extrinsic evidence but i'm glad you brought up the point of intent because there is an exception to this um latent patent defect um issue and extrinsic evidence that was brought up in the order you presented to us um while i was doing my research on this uh i found a case that came out of the southern district and it's called hirsch first jupiter golf club it's 232 federal supplement 3d 1243 and this case um brings us back to general principles of contract interpretation we talk about um the court's duty is to um interpret the contract in such a matter to i guess capture the party's intent you know what's important what do the parties intend to bargain for and it says um in considering and interpreting what the party's intended to bargain for you can look at evidence extrinsic evidence outside the record to show not what was done before the contract was entered into but how the parties performed under the contracts you know what was their course of performance um how does that show um their belief as to what the coverage um under this particular case um was is that a florida case so that would be that's a southern district case interpreting interpreting florida law yes and so they um they cite they rely on a florida supreme court case and that case is the black hawk heating and plumbing and that's 302 southern second 404 and the court says um courts are allowed to look at the party's conduct and performing their contract to resolve the absence of a provision on it well um and it says and the parties by their own conduct placed a construction upon it which is reasonable such construction will be adopted by the court upon the principle that is duty of the court to give effect to the intention of the parties when is not wholly invariance with the correct legal interpretation of the terms of contract and the hirsch court goes on to say the parole evidence rule precludes admission of a prior or contemporaneous um evidence with the formation of the contract but um course of performance is not parole it doesn't violate the parole evidence rule because it comes later it shows the intent so let's look at what the um is that just so i'm clear how does that square up with florida supreme court's answer to our certified question in the washington national case where they seem to say yeah look we've got district courts of appeals that are considering extrinsic evidence to construe insurance contracts and that's wrong because what you're supposed to do if the thing is ambiguous is construe it in favor of the insurer you know i went and i looked at um those uh layton and peyton defect cases and i tried to go through a number i'm not even sure i guess before we get there i'm happy for you to get to layton and peyton but again maybe this is my own confusion but i guess i'm taking what the court says in washington national to say when there is an ambiguity full stop what do you do contrapparentum says you construe it yeah i i think that what they were saying is is not what notwithstanding what is happening um in the lower court in this case considering extrinsic extrinsic evidence um let's not lose sight of the principle that ambiguities are construed against the drafter i don't think that that is um exclusive to construe considering any other evidence i think you can still consider other evidence and the florida supreme court in the case that i referenced at the hirsch case sites says it is entirely appropriate to consider um course of conduct evidence um so in this case that course of conduct evidence is the fact that um you know we have all the emails showing that they didn't want windstorm coverage let's after the matthew claim they filed their matthew claim in october of 26 it was denied in uh late october of 26 written reasons were no windstorm coverage they had a renewal meeting with the agent that came up for the erma policy in january just a couple months later at no point during that meeting did they say we want name windstorm coverage so i think that course of conduct evidence is important here and it's not violent of the parole evidence rule what is it just like what does the decision tree look like for a court interpreting an insurance policy if the court looks at the policy and says i conclude that this is ambiguous at that point it seems to me there are two possible moves one is contra preferentum says i've got to give the benefit of it out to the insured the other is well i guess i can consider extrinsic evidence at least to the extent that it bears on course of conduct is it one or the other or do you think it's kind of both i don't really understand what what a court confronting that fork in the road is supposed to do yeah i'm not really sure that there's a logical tree you know that we would like to have and see every single court follow i think if you look at the cases you're going to find some that are all over the map um what's the right answer sure um so in looking over this and preparing for today i think that yes i you know i'm not going to disagree and stand here and say that you're not supposed to interpret the contract if it's ambiguous against my client i still think that you are allowed to consider other forms of evidence that might shed light to get you to that truth to get you to the just and correct answer so i guess what you're saying then is that the two moves can operate simultaneously you can you can construe a contract against the drafter or in favor of the insured while at the same time sort of peeking at the other extrinsic evidence to to get a sense for like what the parties really meant i think so so when you're i think when you're construing something if you find it to be ambiguous um you know the goal again i think is to get at what the party's intent was so i think these um you know the parole evidence rule these other devices i think these are devices a court can use and we've sort of developed some rules and some structure about where the courts can borrow from this and borrow from this and deviate from the written document but i think at end of the day um you know what is correct what we need to find what the party's intended to do what does the evidence show the party's intended to do so i here's the question that i have it it seems like we've got a couple new doctrines that have been under discussion right and maybe the patent-laden doctrine would favor your friends on the other side and maybe the doctrine from hirsch that you've talked about would favor the position that you're taking but what do we do with the fact that the district court didn't consider that i can tell either of those doctrines have have both of the parties forfeited are we limited to kind of the decision tree that the district court used in the absence of either party pointing out any error in that decision tree and just evaluating that decision kind of for what it is on its own terms well uh your honor that decision favors me so to the extent you know that i mean they've they've they've argued that it's you know wrong for reasons besides the ones that we've talked about so i don't know that that necessarily favors one party or the other but have you both essentially forfeited these other arguments or should we still consider them for some reason well your honor you have this de novo so i don't think that it's been forfeited if that's something that the lower court didn't um again we think that marcosano was a correct um way for the lower court to follow to get to their rationale regardless of any ambiguities regardless of the patent of latent defect um so there is a basis there um you know i would like to address because we talked about the merger clause in policy and i did look at that law as well um aspen's policy says under in its changes is the subtitle and it says this policy contains all the agreements between you and us concerning the insurance afforded it goes on the first name insured shown in the declarations is authorized to make changes blah blah so it basically just says under what terms changes can be made is our position now the case on the um i have a case called duval that i found that discusses the merger clause and that's duval motors uh verse rogers and that's 73 southern third 261 and the court is a florida first circuit um case and they say the purpose of a merger clause is to affirm the party's intent to have the parole evidence rule applied to their contracts and when you look at the parole evidence um clauses i mean the merger clauses you find in some of these contracts in the cases you pull there is a statement that the agreement supersedes all you know supersedes all informal understandings and oral agreements related related to the contract that's what the duval case says but you could pull some of the other cases that you're that the court um had in the order to us and there is language in those contracts that say you know this provision or all the agreements are superseded by this agreement we don't have that supersession language in the aspen contract so i would argue that that is not necessarily that is not a um integration clause um you know to what extent that that would preclude the um application of the parole evidence rule i'm not sure but again i don't think we we need to get there because i think it's appropriate for you to consider the cases showing um conduct of the up so unless you have any other questions thank you very much i just want to briefly respond to a few things and kind of lay out the decision tree there at least that's my plan but obviously happy to answer questions instead um so first as you heard there was no support no justification given to this court how the policy possibly excluded coverage the only thing you were pointed to was something outside the policy policy like emails or renewal documents applications i just want to very quickly read this court's decision king versus all state from from this court and it explained its hornbook insurance law that a binder merges into a subsequently issued insurance policy that's the part that they rely on and in case of a conflict or ambiguity the policy controls in addition to that the state farm versus mauer case we cite as well which also says if there's conflict between the application and the policy the one that provides greater coverage is the one that controls that's exactly what we set forth in our motion in response to their summary judgment and our summary judgment so they have no support offered to this court that their policy excludes coverage the only thing they presented is uh extrinsic evidence where the case law is abundantly clear that the policy controls over that so that is just to respond to their point their points in terms of the decision tree and we did it in our motions we tried to encourage the district court to follow this but if you look at it so if you go with the 2016 policy the first thing you do is look at the policy does it provide coverage and as i've explained that policy does have some ambiguities on the face of the policy those ambiguities exist because on the declaration page it has a three rinse three page words indicating that there is coverage for wind but excluded exclusion for named wind storms provides no definition later in the policy clearly provides coverage for several aspects of the damage so it's ambiguous and um what we our decision what we propose to the district court to follow is the correct thing is because it's ambiguous it should be construed in favor of the insured that was your response to your response to his response to my question that may be sort of the principle of contraproferentum and sort of consideration the hirsch principle consideration of extrinsic evidence to show um course of conduct they can sort of operate simultaneously yes so to to get there they would have had to give you an explanation like the questions did where you could get there and before you could get there first there would have to be a latent ambiguity which none has been presented the ambiguity exists on the face of the policy and second when you look at the cases that have been been cited by this court on what constitutes a latent ambiguity and what intrinsic evidence could be considered it is extremely limited if you look at this court's decision johnson enterprises versus fpl it's for something very small like you can look beyond the policy to see who who are actually parties to the contract and that explained that's because you're not really rewriting it you're just looking hey who signed that application are they indeed party to the contract you can do a consider that type of extrinsic evidence so they haven't even proffered a latent ambiguity and they haven't um given you a scenario where that would ever be proper um so that's kind of the third part and then on the 2017 um policy the decision tree easy there as i think it's beyond dispute now you look at the policies itself it provides coverage there's no ambiguity to it it clearly provides coverage they don't proffer anything to dispute that so you never even get to where you would even possibly consider whether you would go beyond that and if you did as i indicated before if you did consider which would be improper whether you go beyond that only thing they point you to is the insurance application and some emails and floral law is let's say let's say that we do think that the latent patent distinction matters um i'm not necessarily saying that that's that that's what any of us thinks even me but let's say let's say that we did would your client have forfeited that argument by not discussing it in those terms no we would not because our position is that the what you do is just a general i answered those questions because they were proffered a few days ago our position is you don't need to get into that because the florida law is already decided on that as it relates to insurance contracts based on the best example is the 11th circuit this this court submitted that question to the florida supreme court and the insurance contract it's different it's a higher standard and because of that wasn't that case about an insurance contract though yeah it was and in that case the florida supreme court if i if i may i'm going to talk and just a quick quote of it district court decisions that allowed extrinsic evidence in an attempt to explain clarify or resolve an ambiguity in an insurance contract do not alter this court's established precedents that ambiguous ambiguous contracts of insurance are to be construed against the insurer as the drafter of the policy so that you don't even need to go that's why our argument is you don't even go down that road there's clearly an ambiguity as to one of the policy this is an insurance policy not just a general contract and because it's an insurance contract it's already the the laws already established you are to construe that in favor of the insured in that one more thing that decision was a plurality right um i did see i did see a note to that but but there's um if you go through my initial brief i cited several other florida supreme court cases with that exact same uh premise thank you so i would rely on those those are all the questions i have i would ask that the summary judgment be reversed for for further proceedings thank you very much for your time this morning we'll be in recess until 9 a.m tomorrow